CLAUDE ANTOINE CHOPPIN and others *v.* JEAN PIERRE MICHEL.

An act of sale of lands, passed in 1774 before a Spanish commandant in Louisiana, in the presence of two witnesses, which recites that the vendor did not sign it because he could not write, and that the title was delivered to the vendee who took immediate possession, and which had remained among the notarial records of the parish, is admissible in evidence to prove a title to the property. *Per Curiam:* The act would have been sufficient evidence of title under the Spanish law, which permitted parol sales of immovables; it has all the requisites of an authentic act; and the absence of the vendor's signature is sufficiently accounted for by the public officer who received it, the ordinary mark of a party to an authentic act not being required at that period.

An extract certified by the clerk from the minutes of the court, showing that a judgment had been rendered in a suit, though the minutes were signed by the judge, is not the best evidence of the judgment, as the law requires a judgment to be given and signed in every case; and it is to be presumed that one exists until the contrary is shown. The extract from the minutes would be admissible to prove a judgment rendered in 1814, on proof that no judgment could be found in the record, and that no other than that entered on the minutes appeared to have ever existed, or that it had been lost.

Testimony of witnesses taken in a suit between other parties, offered to prove possession by persons long since dead, is inadmissible, where the affidavit made for the purpose of laying a foundation for its admission does not state that the witnesses are dead, nor what efforts have been made to procure other evidence of the fact.

Copies of judgments of the Supreme Court, certified by the clerk, are sufficiently proved.

The signatures of the Spanish governors, and other known officers of the former provincial governments of Louisiana, prove themselves. Where any question is raised as to the authenticity of such signatures, or the authority of the officer, the burden of proving the fraud or want of authority, devolves on the party alleging such fraud or want of authority.

A defendant in a petitory action may defend himself by setting up title in a third person.

By a royal order of the 22d October, 1798, the power to grant lands was taken from the Governor of the province of Louisiana, and restored to the Intendant.

APPEAL from the District Court of West Baton Rouge, *Deblieux,* J.

GARLAND, J. The plaintiffs allege they are the owners, and that they, and those under whom they claim, have always been in possession of a tract of land of fifteen *arpents* front on Fausse Rivière, by a depth of forty *arpents.* That notwithstanding their title, which has been confirmed by the United States, and their actual possession, the defendant pretends to be the owner of a part of said land. They say the land now claimed is a

part of a tract of forty *arpents* front on the Mississippi river, by the same depth on the lower channel of Fausse Rivière, which was granted on the 9th February, 1767, by Desmazillieres, then Commandant of Pointe Coupée, to Pierre Perreault, and is derived from him by a regular chain of titles. They ask a judgment for the land, and for $1,000 damages.

The defendant denies generally the allegations in the petition, and specially denies that the plaintiffs are either the owners or possessors of the land claimed, or that they have any title to the same. He further says, that he is the *bona fide* owner and possessor of a plantation, situated on the river Mississippi, with a front of about twenty-seven *arpents*, with such depth as will make a superficial quantity of 800 *arpents*, the same having been granted, located and surveyed under the Spanish government in Louisiana, bounded on the upper side and rear by vacant land, and on the lower line by Estevan Watts, and on the point by the river. This land he says was granted to Joseph Mollere by Governor Gayoso, on the 14th February, 1799 ; and was, on the 4th June, 1800, regularly located by Lareau Trudeau, Surveyor of the Province, &c. That he holds, owns and occupies this land by regular conveyances from Mollere ; therefore he sets up his title, and pleads the prescription of ten, twenty and thirty years. The answer concludes by a prayer, that, in case of eviction, he may have a judgment for $10,000 for improvements, he being a possessor in good faith.

Choppin, one of the plaintiffs, was a defendant in the case of *Devall* v. *Choppin et al.*, 15 La. 566, and, with the other plaintiffs, now claims the fifteen *arpents* front on Fausse Rivière, by a depth of forty *arpents*, running towards the Mississippi, under the same title which the defendants in that suit set up to protect themselves from the claim of Devall, in which they succeeded. For the particulars of this title, see pages 571, 572, 573 of the report mentioned. The rights of Dupré and Demonville, the other plaintiffs, are derived from Choppin and the heirs of François Lebeau, whose title formed a part of the suit alluded to ; and, in fact, had Devall succeeded in his suit, his titles, derived from Conway, would have covered a considerable portion of the land to which the plaintiffs assert a title. In this case, it

is further proved by Charles Morgan, that on the 4th of August, 1806, he, as a United States surveyor, and in pursuance of an order of the Surveyor General, surveyed the tract of land called Pointe du Manoir, for Pierre Perreault or Perreau, and gave it forty *arpents* front on Fausse Rivière by the same on the Mississippi, making 1,468 acres, equal to about 1,600 *arpents*. Baudin lived for some time on the land. · L'Hermite, also a surveyor, says that, in February, 1821, he surveyed the land for Alexander Baudin, and followed a plat that appeared to have been made by Morgan. The lines then extended to that of Labauve, and included the fifteen *arpents* front, claimed by the plaintiffs, it being exactly forty *arpents* from the Mississippi to the limit of Labauve. Baudin then occupied the land, as he had previously. In 1820 he presented his claim to the Land Office in New Orleans for confirmation. He represented it as being situated at a place called Pointe du Manoir, at the eastern mouth of Fausse Rivière, containing forty *arpents* front on the Mississippi, and forty *arpents* in depth, bounded on one side by the channel of Fausse Rivière, and on the other by the Mississippi. The claim was supported by the titles now again presented; it was recommended for confirmation, and was actually confirmed, as reported, by an act of Congress passed the 28th February, 1823; but from the plat of survey obtained from the Surveyor General's office, in May, 1844, it appears that the claim has been located for only 875 98-100 acres; and it is evidently not located according to the confirmation, from which the Surveyor General says, "there is no confliction known to this office."

The defendant's title is based upon a *requête*, signed in New Feliciana, the 26th November, 1798, by Joseph Mollere, who prays the Governor to accord to him eight hundred superficial *arpents* of cypress land in the district of Pointe Coupée, " a dos y media leguas del fuerte o antiguo reducto rio abaxo y lindando por el sur contieras apeadas a favor de Dn. Estevan Watts." On the 14th February, 1799, Governor Gayoso gave the usual order on this application, directing the Surveyor General to put the party into possession of eight hundred *arpents* of vacant land as prayed for, without causing prejudice to any other proprietor, &c. On the 4th June, 1800, Lareau Trudeau located

the claim as fronting on the Mississippi, bounded on the lower side by Don Estevan Watts, and above and in the rear by vacant land. The claim was presented by Mollere, or his heirs, for confirmation, and by the commissioners rejected, as there was no proof of possession on the 1st October, 1800. On the 2d July, 1818, the parish judge of East Baton Rouge offered the land at public auction, as a part of the property belonging to the heirs of Mollere, who had died in the year 1811, or previously. At this sale, the land was adjudged to Pierre Gautier for $800, payable in one, two and three years. The land is sold with an express stipulation of no warranty on the part of the vendors, and at the risk and peril of the purchaser, to whom the title was exhibited. On the 29th March, 1820, Gautier sold, by public act, before the same parish judge, to the defendant, the same tract of land, describing it as the one purchased of the estate of Mollere on the 2d July, 1818, as would more fully appear by the act, then of record in said office. In this act, Gautier only warrants against himself, his heirs, or persons claiming under him. The defendant took possession of the land soon after this sale, and has held it ever since. He has paid taxes on it as Gautier did, and also cultivated it. In 1820, he presented it to the Land Office in New Orleans, for confirmation; it was reported on favorably, and confirmed by Congress at the same time that the claim of Baudin was. The confirmation was in the name of the heirs of Mollere, for the use of Michel. The claim has been located by the Surveyor General of the United States, and the full quantity of eight hundred *arpents* allowed it.

One witness testifies that, in the year 1804, he was on the land for several days with Mollere, who had one or more cabins on it, for the use of himself and some slaves who were there getting timber, and that it appeared as if he, or some other persons, had been there at other times. It is also shown that one Robin Delogny was also on the land, or near it, cutting timber; but whether he had permission from some of the parties, or was a trespasser, is not proved. No title to any land in that quarter is exhibited, or pretended to exist in the name of Delogny, further than may be inferred from his name being mentioned in

Choppin and others v. Michel.

one of the acts between Baudin and Guinault, as being a conti-
guous proprietor.

The court below gave a judgment for the defendant, on his
plea of prescription, and the plaintiffs have appealed.

Our attention is first called to several bills of exception.

I. The plaintiffs offered in evidence a copy of an act of sale·
from Perreault to Herbert or Hebert, to the introduction of
which the defendant objected, on the ground that it does
not appear that the act was signed, and that the certificate of
the judge is no proof that it was. This is the same objection
taken by the counsel of Devall in his case against Choppin
et al. in 15 La. 573–4. It was then held to be admissible,
and we see no reason to change our opinion. The only differ-
ence now is, that the document is offered as evidence against
Michel, instead of Devall. In both cases it was relied on, as be-
ing part of the title under which the plaintiffs claim.*

II. The plaintiffs offered in evidence, in order to show a title
in Baudin, an execution issued against Catherine Herbert, &c.,
in a suit brought by her against Mathurin, in which it is said
that there was a judgment against her for costs; also a sheriff's
deed to Baudin; and, to prove that there was a judgment of
non-suit, they offered an extract from the minutes of the court,
which were signed by the judge thereof, wherein the title and

---

* The nature of the document offered in evidence is explained in the following ex-
tract from the opinion of the court in *Devall* v. *Choppin et al.*

"Plaintiff objected to the production of a copy of the act of sale from Perrault to
Herbert, on the grounds that the original had not been signed by the vendor, that it
is not an authentic act, and that, therefore, the original must be produced and the sig-
natures proven. The act was passed in 1774, before the Commandant of Pointe
Coupée, in the presence of two witnesses, and states that the vendor did not sign it,
because he did not know how to write; the title is mentioned to have been delivered
to the vendee, who, it appears, took immediate possession of the land. We think this
act would have been sufficient evidence of title under the Spanish law, which, as this
court has repeatedly recognized, permitted parol sales of immovables; it has all the
requisites of an authentic act; as such it remained deposited among the notarial re-
cords of Pointe Coupée, and the absence of the vendor's signature is sufficiently ac-
counted for by the public officer who received it; at that remote period, the ordinary
mark of a party to an authentic act was not required. In our opinion, the District
Judge did not err in permitting the copy to be read in evidence." 15 La. 573.

Choppin and others v. Michel.

number of the suit is given, the court and the parish named, also the year and day of the month; and it says—" Plaintiff non-suited, and to pay costs of suit to be taxed."* This was objected to, as an extract from the minutes of the court was not the best evidence, since the law requires a judgment in each case to be given and signed, which it is to be presumed was done. The judge admitted the extract from the minutes to be read. In this, we think, he erred. The judgment taken from the record is certainly the best evidence, and we are to presume that one exists, until the contrary is shown. This proceeding took place in the year 1814, when the courts were somewhat more indifferent as to forms than at present; and this court has, on several occasions, leaned in favor of their proceedings, when the ends of justice were to be promoted.

But, we think, before secondary evidence should be admitted, it should be proved that the best cannot be obtained. In this case, if it were proved that no judgment could be found in the record, that no other than that entered on the minutes seemed ever to have existed, or that the papers were lost, we should be disposed to say that the extract from the minutes was admissible; but until some ground is stated, or foundation laid, we think it unadvisable to depart from the settled rule. In one instance, we held a sale under execution good, upon proof of the judgment being lost.

III. The plaintiffs in order to show an early possession in Herbert and others, under whom they claim, offered in evidence the depositions of Madame Porche and J. B. Tournoir, taken in the

---

* Subjoined is the extract offered in evidence:

" Catherine Herbert, widow of Pierre F. Bidou, No. 227.     v. George Mathurin.          Fourth District Court, Parish of Pointe Coupée, Louisiana, Tuesday, 7th April, 1814.

Plaintiff non-suited, and to pay costs of suit to be taxed. (The minutes are signed) April 19th, 1814.          H. M. BRACKENRIDGE, Judge 4th District.

State of Louisiana, Parish of Pointe Coupée. I, the undersigned, Clerk of the Fourth Judicial District Court, do hereby certify that the foregoing judgment of non-suit has been by me truly extracted from the minutes of the court. Given under my hand and seal, this 22d day of November, A. D. 1837.

{ L. S. }                                        A. BELZOUS, Clerk."

suit of *Devall* vs. *Choppin et al.* They were objected to, on the ground that the defendant was no party to that suit. But the court received them, on the ground that there was nothing suspicious about them, and that the testimony related to an ancient settlement, and possession, by persons long since dead. For the purpose of laying a foundation to admit these depositions, the affidavit of one of the counsel was offered, who deposed that he had sought in vain, with one of the plaintiffs and a justice of the peace, among the oldest inhabitants of Pointe Coupée, for witnesses relative to the possession of Joseph Herbert, and his insanity, and other facts, and could not find any. But the affidavit no where states, that Madame Porche or Tournoir are dead, nor what particular efforts were made to get testimony. We think the judge erred. He should have at least required the plaintiffs to make out a strong case, to authorise them to use such evidence against a party not present, nor represented when it was taken. We will not undertake to say, under what circumstances these depositions may be admissible, nor for what purpose. It is at present sufficient to say, that they should not have been admitted under the circumstances they were.

IV. The plaintiffs offered in evidence, " a certified copy of judgment rendered in the Supreme Court, in the suit of *Alexander Baudin* v. *Dubourg and Baron, attorneys in fact, &c.* This was objected to, so far as it relates to all proceedings previous to those in that court, on the ground that they were not certified to be copies of the original by the proper officer." From the manner in which this objection is stated, we do not understand that any thing more than the judgment of this court was offered as evidence. If that be true, then the judge did not err, as the clerk of this court is entirely competent to certify copies of its judgments.

V. The defendants offered in evidence, in order to show a want of title in Madame Bidou, a certified copy of a paper purporting to be the petition of one Juan Glaize, addressed to the Governor General, in 1776, in which he says, that he had purchased the land claimed by the plaintiffs of Joseph Herbert, and praying that he be put in possession of it, and an order of Governor Galvez thereon, dated in 1777. The original is cer-

tified to be in the office of the judge of the parish of Pointe Cou-pée. To this the plaintiffs objected, on the ground that it does not appear to be an original, nor an authentic act, nor a copy certified by a proper officer. The judge certifies that the copy is from an original document, and the contrary cannot therefore be presumed. The order at the foot of the petition or letter, is directed to the Commandant of Pointe Coupée, directing him to put the petitioner in possession of the land at the *Punta del Ma-noir*, and purports to have been signed by Governor Galvez. This court has frequently held, that the signatures of the Span-ish governors, and other known and authorised officers of the provincial government prove themselves. If any doubt existed as to their authenticity and genuineness, or as to the authority of the officer, the burden of proving the fraud, or want of author-ity, devolves on the party making the objection.

The document is on file in the office of the parish judge as a muniment of title belonging to Juan Glaize, or some person claiming under him. It certainly does not belong to the de-fendant ; and all he can do is to produce a copy of it, unless it can be shown that the court has authority to compel the parish judge as its custodian, to produce it in court. The defendant has a clear right to set up an outstanding title in another person, to protect himself ; and, if the document is calculated to prove such title, it is admissible, and the court erred in rejecting it.

Upon the merits, we are of opinion that justice requires this case to be remanded for a new trial. It appears to us, as the case is now presented, that the title under which the plaintiffs' claim has not been located according to the terms of the confirm-ation by Congress, or the grant to Perreault by the French au-thorities, nor in conformity to the survey made by Morgan in 1806. Besides this, Morgan testifies that nearly one-third of the land surveyed by him as included in the title to Per-reault, has been washed away by the river. It is, there-fore, important to ascertain where the ancient boundaries were, and how much of the land still remains within the an-cient limits. It is also important to ascertain something more in relation to the defendant's title. It is a fact well authenti-cated by public documents, and by the public history of the

country, that, on the 22d of October, 1798, a royal order was issued taking from the Governor of the Province of Louisiana the power to grant lands, and that that authority was restored to the Intendant. This order was formally communicated to Governor Gayoso, on the 13th of February, 1799, and his order directing the Surveyor General to put Mollere in possession of the land asked for in his petition dated in the month of November previous, is dated on the 14th of February, 1799. Mollere asks for a tract of land, two and a half leagues from the old fort or redoubt, descending the river, adjoining the land surveyed to Estevan Watts. None of the witnesses tell us any thing about the location of the old fort, or the distance of the land claimed from it.

It is, therefore, ordered and decreed, that the judgment be annulled and reversed, and this case remanded for a new trial, with directions to the court below, in the admission and rejection of testimony, to be governed by the principles herein stated, and otherwise to proceed according to law; the defendant paying the costs of the appeal.

*S. L. Johnson* and *L. Janin*, for the appellants.

*G. S. Lacey* and *Labauve*, for the defendant.